IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NAHLA ABDELNABI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15 CV 3161 |
| v. ) | |
| ) | Hon. Charles R. Norgle |
| COOK COUNTY, et al. ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Nahla Abdelnabi ("Plaintiff") brings this suit against Cook County, the Cook County Sheriff's Office ("Sheriff's Office"), Deputy Timothy Wilson ("Wilson"), Deputy Michael Morys ("Morys"), Deputy Quintin Bradshaw ("Bradshaw"), and Deputy Michelle Mentz ("Mentz") (the four deputies collectively referred to as "Deputy Defendants" or "Deputies" and all defendants collectively as "Defendants") pursuant to 42 U.S.C. § 1983 for alleged violations of Plaintiff's civil rights. Plaintiff also asserts a number of state law claims arising from the same interaction. Before the Court is Defendants' motion for summary judgment. For the following reasons, the motion is granted.

### I.     BACKGROUND[1]

On May 17, 2013, Judge Laura Cha-Yu Liu in the Chancery Division of the Circuit Court of Cook County order, Approving Report of Sale and Distribution, Confirming Sale and Order of Possession, was issued for 8851 W. 100th St., Palos Hills, Illinois, a two-story single family home, where Plaintiff resided (the "Residence"). On December 5, 2013, an Order of Possession was entered in the Circuit Court of Cook County, which ordered the Sheriff to evict and

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 statements and notes any discrepancies.

dispossess any and all persons from the Residence. On April 10, 2014, the eviction was to be executed.

On April 10, 2014, Defendants were given a number of evictions to execute; among them was the eviction for the Residence. Upon arrival, in law enforcement vehicles, at the Residence, Deputy Wilson spoke with a bank representative at the scene. Deputy Bradshaw retrieved tools, a crowbar and hammer, from the trunk of his squad car. At approximately 8:45 am, the uniformed Deputies approached the Residence, and Deputy Bradshaw knocked and loudly announced, "Cook County Sheriff's Department Eviction Unit. We [sic] here for an eviction, open the door."[2] Def.'s 56.1(A)(3) Statement of Material Facts in Supp. Mot. Summ. J., Ex. B, Tr. Test. Quentin Bradshaw, p. 26:8-11.

Plaintiff was upstairs in her bedroom asleep but was awoken by Deputy Bradshaw's knocking. Plaintiff was startled awake by the loud knocking and initially believed that the several individuals at the front door were burglars, only after she noticed their uniforms did she realize they were law enforcement officers. Once awake, Plaintiff responded to Deputy Bradshaw by saying "I'm coming[,]" "I have to put something on[,]" and "I'm in my pajamas." Def.'s 56.1(A)(3) Statement of Material Facts in Supp. Mot. Summ. J., Ex. A, Tr. Test. Nahla Abdelnabi, p. 153:23-4. However, these responses were not yelled and instead spoken at a regular volume. Plaintiff searched for clothing to cover her pajamas and shortly thereafter made her way downstairs; there is some dispute as to whether Plaintiff started to walk down the stairs and then went back upstairs. Regardless, Plaintiff quickly made her way down stairs.

There is some dispute between the parties as to how the events unfolded once Plaintiff

---

[2] Plaintiff disputes whether any of the Deputy Defendants identified themselves as Sheriff's Deputies. See Def.'s 56.1(A)(3) Statement of Material Facts in Supp. Mot. Summ. J., Ex. A, Tr. Test. Nahla Abdelnabi, p. 138:2-5; Pl.'s L.R. 56.1(b)(3)(C) Statement of Additional Facts Requiring Denial of Def.s' Mot. Summ. J., Ex. A, Dep. Nahla Abdelnabi, pp. 13-15.

was downstairs at the door. Plaintiff avers that once she was downstairs, she quickly made her way to the door and attempted to open the door to allow the Deputy Defendants entry, but she was unable to open the door. She claims that the lock was broken. Plaintiff avers, that at this time, she attempted to open the door and that she was visible to the Deputies through the door. Then, unable to open the door, after no more than ten seconds, Deputy Wilson kicked open the door and it struck Plaintiff in the head and face; according to Plaintiff she was clearly within both the sight of the officers and the path of the door. Plaintiff swears that the Deputies never identified themselves as law enforcement officers, but she was able to identify them as such because of their uniforms, that they never informed her that they were serving an eviction, and that they did not warn her that they were kicking in the door.

Defendants, however, disagree with Plaintiff's account of the events in question. According to Defendants, once Plaintiff made her way down the stairs and approached the door, Deputy Bradshaw said "Cook County Sheriff's Department Evictions Unit, open the door for an eviction." Def.'s 56.1(A)(3) Statement of Material Facts in Supp. Mot. Summ. J., Ex. B, Tr. Test. Quentin Bradshaw, p. 38:15-21. At this point Plaintiff disappeared inside the house, outside of Deputies Bradshaw and Mentz's line of sight. Once Plaintiff had disappeared inside her home, Deputy Bradshaw could not open the door and immediately attempted to force entry into the Residence, by wedging the crow bar between the door and frame, but to no avail. After unsuccessfully attempting to force the door open with a crowbar, Deputy Wilson yelled for anyone to move away from the door and successfully kicked the door open. Deputy Wilson and the rest of the Deputies testify that before Deputy Wilson kicked open the door, he loudly warned anyone inside to move away. None of the Deputies say that they either saw or heard Plaintiff behind the door when Deputy Wilson was preparing to kick the door open. Plaintiff

3

does not say anything about the sounds of the crowbar.

When Deputy Wilson kicked the door open, there is—once again—very little disagreement as to the events as they unfolded. Plaintiff was struck in the head and face by the moving door, resulting in a cut and bloody face. The Deputy Defendants entered the home with their guns drawn and saw Plaintiff bleeding from the face. Plaintiff then walked to the kitchen to get a towel to wipe the blood from her head and face and was then escorted upstairs by Deputy Mentz to change out of her bloody clothes. Shortly thereafter, an ambulance arrived, and Plaintiff was treated by paramedics. After her initial treatment she was placed under arrest, handcuffed, escorted from the Residence, placed in an ambulance, and brought to an area hospital—where she was given stitches for her head injury.

After being released from the Hospital, Plaintiff was brought to Maywood lock-up by Deputies Mentz and Bradshaw and held for five hours. Plaintiff was charged with Obstruction of Service of Process in violation of 720 Ill. Comp. Stat. 5/31-3. Plaintiff was prosecuted by Cook County Assistant State's Attorney Eric Wojnicki, and after a jury trial, she was found not guilty. Plaintiff filed the instant suit complaining of violations of her constitutional rights as well as other state law claims.[3] Plaintiff does not assert a basis for her interest in the Residence after Judge Cha-Yu Liu issued the order in the Chancery Court.

## II. DISCUSSION

### A. Standard of Decision

"Summary judgment is appropriate if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law." Dunderdale v. United Airlines, Inc., 807 F.3d 849, 853 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is

---

[3] Neither party raises issues pursuant to Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984).

4

such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). The Court views the evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. Id. The Court does not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." Stokes v. Bd. of Educ. of the City of Chi., 599 F.3d 617, 619 (7th Cir. 2010).

But before the nonmoving party "can benefit from a favorable view of evidence, he must first actually place evidence before the courts." Montgomery v. Am. Airlines, Inc., 626 F.3d 382, 389 (7th Cir. 2010). Simply showing that there is "some metaphysical doubt as to the material facts" will not defeat a motion for summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted); see also Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Summary judgment is appropriate if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Majors v. Gen. Elec. Co., 714 F.3d 527, 532 (7th Cir. 2013) (quoting Celotex Corp., 477 U.S. at 322).

**B.  Excessive Force under § 1983**

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Phillips v. Cmty. Ins. Corp., 678 F.3d 513, 519–20 (7th Cir. 2012) (internal quotations

omitted, citing Graham v. Connor, 490 U.S. 386, 396 (1989)). "An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the [seizure], the officer uses greater force than was reasonably necessary to effectuate the [seizure]." Id. "[T]he officers' subjective motivation is irrelevant." Brigham City, Utah v. Stuart, 547 U.S. 398, 398 (2006).

The question before the Court is whether the Deputies use of force was reasonable under the circumstances. Here, the Deputies were in the process of executing an order of possession, a judicial decision ordering that they take possession of the home and remove any and all occupants therein, but they were unable to secure the cooperation of the occupant of the home. Plaintiff does not contest the legal validity of the Order of Possession. The evidence before the Court shows that that when the Deputies were in the process of serving the Order of Possession upon the Residence, a then unknown person approached the door, did not say anything as they stood inside the residence, and did not open the door. Plaintiff admits that she approached the door, remained silent, and did not, or could not, open the door for the Deputies.[4] Given the circumstances the Court finds that the Deputies use of force to obtain entry was reasonable.

"[T]he Fourth Amendment's ultimate touchstone is 'reasonableness[.]'" Id. at 398. Here, the Deputies were confronted by an unidentifiable figure behind a closed door and once they lost sight of that figure, they quickly responded by entering the home. The Deputies had no knowledge of who was behind the door, whether the person had a weapon, or if they were going to retrieve a weapon. The force Deputy Wilson applied was to the door, not Plaintiff. Once inside the Deputies tended to Plaintiff's injuries and there are no other allegations of any force being used once Defendant Deputies were in the Residence. Viewing the evidence and drawing

---

[4] While Plaintiff maintains that the Deputies did not identify themselves as law enforcement officers she admits that she recognized them as police officers because of their uniforms.

all reasonable inferences, in the light most favorable to the Plaintiff—as the Court must at the summary judgment stage—the evidence still weighs heavily in favor of Defendants. Accordingly, the Court finds that the force used by Deputy Wilson was reasonable because the circumstances above necessitated a forcible entry to execute a judicial order and to ensure officer safety. Therefore, summary judgment in favor of Defendants on Count I is appropriate.

C.     **False Arrest under § 1983**

"To prevail on a false-arrest claim under § 1983, a plaintiff must show that there was no probable cause for his arrest." Neita v. City of Chicago, 830 F.3d 494, 497 (7th Cir. 2016). "An officer has probable cause to arrest if 'at the time of the arrest, the facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" Id. at 497 (quoting Thayer v. Chiczewski, 705 F.3d 237, 246 (7th Cir. 2012)). Here, the underlying criminal offense is Obstruction of Service of Process as codified at 720 Ill. Comp. Stat. 5/31-3. Obstruction of service of process contemplates the resistance or obstruction of the authorized service or execution of any civil or criminal process or order of any court. See 720 Ill. Comp. Stat. 5/31-3.

Here, as above, the Court views the evidence and draws all reasonable inferences in the light most favorable to the Plaintiff. According to Plaintiff, she saw the officers from the top of her stairs and did not yell to advise them of her movements when she disappeared back into the Residence. She then proceeded downstairs towards the door. Plaintiff also admits that she did not open the door, that while she was at the door she did not reply to any of the Deputies calls, and did not communicate who she was or what she was doing. The Defendant Deputies would have seen a person, who was being instructed to open the door, appear and then disappear back

7

into the Residence before coming towards the door. And once the then-unknown person was at the door, the Deputies' orders to open the door went unheeded and the person inside the house remained quiet.

Given the facts above, a reasonably prudent person could have believed that Plaintiff was attempting to obstruct Defendants' efforts to execute the Order of Possession. Deputies arrived at the Residence to execute an Order of Possession—which commanded them to remove any and all persons from the Residence. A person came to the door, did not open the door, and did not communicate with the Deputy Defendants. As a result, the Deputies would have had probable cause to arrest Plaintiff. Accordingly, summary judgment in favor of Defendants on Count II is appropriate.

**D.     Failure to Intervene under § 1983**

In order to succeed on a claim for failure to intervene, a plaintiff must prove that "(1) that excessive force was being used, (2) that a citizen has been unjustifiably [seized], or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994) (emphasis in original). Because Plaintiff fails on Count I, the excessive force claim, she cannot satisfy all of the elements of a failure to intervene claim. Accordingly, summary judgment in favor of Defendants on Count III is appropriate.

**E.     State Law Battery**

A battery is defined as "'the willful touching of the person of another by the aggressor or by some substance put in motion by him[.]'" Razor v. Kinsey, 55 Ill. App. 605, 614 (Ill. App. Ct. 1894) (citing Waterman on Trespass, Sec. 146; 3 Black's Comm., 120; Bacon's Abridgment, title, Assault and Battery); see also Pechan v. DynaPro, Inc., 622 N.E.2d 108, 117 (Ill. App. Ct. 1993);

8

Perez v. Globe Ground N. Am., LLC, 482 F. Supp. 2d 1023, 1031 (N.D. Ill. 2007). However, "[t]he doctrine of qualified immunity shields from liability public officials who perform discretionary duties. Qualified immunity shields from liability police officers who act in ways they reasonably believe to be lawful. The defense provides ample room for mistaken judgments and protects all but the 'plainly incompetent and those who knowingly violate the law." Chelios v. Heavener, 520 F.3d 678, 690–91 (7th Cir. 2008) (internal citations and quotations omitted); see also 745 Ill. Comp. Stat. 10/2-202.

Here, Deputy Wilson was executing an official duty when he kicked the door to the residence open. His use of force to open the door to the Residence was an action that was lawful under the circumstances and in his judgment necessary under the circumstances to ensure the Deputies safety during their execution of the order of possession. These acts were firmly within the discretionary duties of the Deputy and as such fall within the conduct contemplated by the doctrine of qualified immunity. Accordingly, summary judgment in favor of Defendants on Count VI is appropriate.

### F. Malicious Prosecution and Conspiracy to Commit Malicious Prosecution

"In order to prevail on a claim of malicious prosecution under Illinois law, the plaintiff must establish: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) malice; and (5) damages." Fabiano v. City of Palos Hills, 336 Ill. App. 3d 635, 641 (Ill. App. 2002).

Here, the Defendants have conceded several elements: (1) the commencement of litigation, (2) termination in Plaintiff's favor, and (5) damages. However, Plaintiff is unable to show that her arrest was without probable cause because the Court has already determined that

9

there was probable cause to effectuate an arrest. There is no reason to rehash the same discussion here. See Homles v. Village of Hoffman Estates, 511 F.3d 673, 682-3 (7th Cir. 2007) (discussing probable cause for false arrest and malicious prosecution claims in Illinois). Because probable cause existed for the prosecution of Plaintiff, she cannot succeed on either malicious prosecution or conspiracy to commit malicious prosecution claims. Accordingly, summary judgment in favor of Defendants on Counts VII and VIII is appropriate.

### G. Intentional Infliction of Emotional Distress

To prevail on a claim for intentional infliction of emotional distress, "the plaintiff must show that: '(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; [and] (3) the defendant's conduct in fact caused severe emotional distress.'" Dunn v. City of Elgin, Illinois, 347 F.3d 641, 651 (7th Cir. 2003) (quoting Doe v. Calumet City, 641 N.E.2d 498, 506 (Ill. Sup. Ct. 1994)). To establish extreme and outrageous conduct, "[t]he nature of the defendant's conduct 'must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community.'" Id. at 651 (internal citations and quotations omitted).

Here, Plaintiff avers that she came down stairs, approached the door, was told to open the door, and after she failed to comply, Deputy Wilson kicked the door open. There is nothing more than an unsupported allegation in her Complaint that the Defendant Deputies' actions were motivated by her Muslim faith. In Section II(B), the Court determined that the actions of Deputy Wilson were reasonable under the circumstances. Moreover, Plaintiff has put no evidence before the Court to support her allegation nor has she presented any evidence that suggests—let alone proves—that Defendant Deputies intended, or knew that there was a high probability, that their

actions would cause severe emotional distress.

Adopting Plaintiff's version of events, as the Court must at this stage of litigation, the Court still finds that Plaintiff has failed to make any showing establishing the existence of two of the three essential elements of the claim. Plaintiff has not, and cannot, establish that Defendants' conduct was either extreme and outrageous or that Defendants knew or should have known that the conduct would cause emotional distress. Plaintiff cites no authority for a duty of law enforcement officers to execute stress-free Orders of Possession and Eviction as to unidentified building occupants. Accordingly, summary judgment in favor of Defendants on Count X is appropriate.

### H. Indemnity

"Illinois law makes local municipalities, including [Cook County], liable for the payment of any tort judgments entered against one of its employees so long as the employee was acting within the scope of his employment." Grayson v. City of Aurora, 157 F. Supp. 3d 725, 748 (N.D. Ill. 2016); see also 745 Ill. Comp. Stat. 10/9-102. Because none of Plaintiff's substantive claims against the Deputy Defendants have survived, her claim for indemnification must also fail. Accordingly, summary judgment in favor of Defendants on Count XI is granted.

### I. Respondent Superior Liability against Cook County and Cook County's Sheriff's Office

Defendants Cook County and the Sheriff's Office argue that they are entitled to summary judgment as a matter of law on Plaintiff's state law tort claims premised on the theory of *respondent superior*: Count VI (battery), VII (Malicious Prosecution), VIII (Conspiracy to Commit Malicious Prosecution), and X (Intentional Infliction of Emotional Distress). The Court agrees. In the seminal case, Monell v. Department of Social Services, 436 U.S. 658, 691 (1978),

the Supreme Court concluded "that a municipality cannot be held liable *solely* because it employs a tortfeasor—or in other words a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." (emphasis in original). For years, it has been well-settled that a claim against a state or local agency or its officials may not be premised upon a respondeat superior theory." Rascon v. Hardiman, 803 F.2d 269, 274 (7th Cir. 1986) (citations omitted). To sustain a claim against the Cook County or the Sheriff's Office, Plaintiff must show that the Deputies acted pursuant to "an official—albeit impermissible—policy." Id. Plaintiff neither alleges nor introduces any evidence that either Cook County or the Sheriff's Office had a policy condoning impermissible actions. Moreover, the Court has not found any impermissible actions have occurred. Therefore, as a matter of law, the Court enters judgment in favor of Cook County and the Sheriff on Counts VI, VII, VIII, and X.

### III. CONCLUSION

For the foregoing reasons, summary judgment is granted in favor of Defendants for all claims.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: January 13, 2017